ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and U.S. Roofing, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 458–89C, 475–89C.

United States Court of Federal Claims.

April 29, 1994.

Ronald E. Martell, St. Paul, MN, atty. of record, for plaintiff St. Paul Fire and Marine Ins. Co.

Richard D. Corona, San Diego, CA, atty. of record, for plaintiff U.S. Roofing, Inc.

Robert J. Krask, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

ORDER

REGINALD W. GIBSON, Judge.

*Introduction*

This contract case comes before the court on Defendant's Motion For Leave To File An Amended Answer, Counterclaim, And Special Plea In Fraud, filed on March 14, 1994, pursuant to Rule 15 of the United States Court of Federal Claims (hereinafter RCFC 15). Plaintiff U.S. Roofing's opposition thereto was filed on March 29, 1994. Defendant filed a reply to plaintiff's opposition on April 11, 1994.

Plaintiff's opposition relies on the following as justifiable reasons why this court should deny defendant's motion for leave to amend:

(i) Prejudice will result because:

(a) Plaintiff will be forced into the time-consuming process of reassessing its entire case in connection with considering defendant's counterclaims and special plea in fraud; and

(b) Plaintiff will also be required to allot extensive time to deposing defendant's additional and other witnesses on said counterclaims. And

(ii) Defendant's amendment is nothing less than an exercise in futility inasmuch as the United States Attorney failed to obtain an indictment on said issue during the grand jury investigation; thus defendant's proposed counterclaim is undoubtedly without merit.

In response to plaintiff's position, defendant strenuously asserts that because plaintiff is responsible for interjecting the alleged fraudulent consulting claims into this case, *ab initio*, by seeking reimbursement, it obviously cannot candidly aver either surprise or prejudice. Further, defendant states that the United States Attorney's failure to obtain a criminal indictment from the grand jury against plaintiff is inconsequential to this court's decision on the pending issue pursuant to RCFC 15, inasmuch as the burden of proof in the proposed criminal case is substantially greater than such burden in a civil fraud case in this court.

After reviewing the parties' briefs, the relevant rules, and applicable case law, and being fully advised in the premises, this court is constrained to grant Defendant's Motion For Leave To File An Amended Answer, Counterclaims And Special Plea In Fraud.

*Facts*

U.S. Roofing entered into a contract on September 30, 1987, with the United States Department of the Army to re-roof nine (9) warehouse buildings. The contracting officer for the Department of the Army, thereafter, terminated U.S. Roofing's re-roofing contract for default on September 8, 1988. Almost one year later, on September 1, 1989,[1] U.S. Roofing filed suit in this court initially seeking to collect approximately $2.2 million in

damages resulting from defendant's alleged wrongful termination of said contract, and for alleged government-caused delays. Defendant filed its answer to U.S. Roofing's complaint on November 30, 1989, and for the ensuing two years, both parties participated in extensive discovery. Moreover, on April 16, 1991, U.S. Roofing moved to amend its complaint, *inter alia*, increasing its alleged damages to $5.4 million, which motion was granted on April 19 and June 28, 1991.

On November 21, 1991, as a result of the Army Criminal Investigation Division (CID) instituting an investigation of criminal fraud relating to said contract, these proceedings were stayed. 24 Cl.Ct. 513. As part of the criminal investigation of U.S. Roofing, the Defense Contract Audit Agency (DCAA) prepared and completed an audit of U.S. Roofing's alleged fraudulent consultant claims. After the grand jury failed to indict U.S. Roofing on said claims, this court lifted the stay of the proceedings on February 17, 1993.

Defendant, thereafter, received a disclosure order causing or permitting the release of U.S. Roofing's business documents and the DCAA's audit reports to government counsel that had been reviewed and considered by the grand jury during its criminal investigation of plaintiff. These documents were reviewed by defendant's counsel in June 1993; and, on September 20, 1993, he conducted depositions of U.S. Roofing's former employees, focusing specifically on the alleged fraudulent consultant claims that were the subject of the CID investigation. Given these circumstances, plaintiff contends that as of September 20, 1993, defendant had in its possession all of the information on which it now bases its counterclaim in fraud. Therefore, argues plaintiff, the six-month interval between the receipt of all relevant data regarding the fraud claim by September 1993, and the resultant motion to amend on March 14, 1994, is persuasive and probative evidence of the impotence of defendant's counterclaim.

---

1. Initially St. Paul, the surety under this contract, filed suit in this court on August 24, 1989. Defendant filed its answer thereto on October 23, 1989. Thereafter, St. Paul moved to amend said

complaint on two occasions (*i.e.,* on June 3, 1991, which was allowed on June 28, 1991, and on August 13, 1991, which was allowed on November 21, 1991).

*Discussion*

On the pending motion, given the foregoing respective positions of the parties, we must now determine—whether RCFC 15(a) *requires* this court to grant defendant's motion for leave to file an amended answer. Rule 15(a), which governs the filing of timely amendments to pleadings, reads, in pertinent part, as follows:

A party may amend [its] pleadings once as a matter of course at any time before a response is served.... Otherwise a party may amend [its] pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires....*

(emphasis added).

Because RCFC 15(a) mirrors FRCP 15(a) in both language and substance,[2] the U.S. Supreme Court's opinion in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), provides this court with the most instructive interpretation of the operative language contained in this rule:

If the *underlying facts* or circumstances relied upon by a plaintiff [*i.e.,* party] *may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason*—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—*the leave sought should, as the rules require, be "freely given."* Of course, *the grant or denial* of an opportunity to amend *is within the discretion of the* ... *Court, but outright refusal to grant* the leave without any justifying reason appearing for the denial *is not an exercise of discretion;* it is merely abuse of that discretion....

*Id.* (emphasis added).

Given these varied circumstances as justifications for denying a motion to amend, this court "will deny a motion to amend the complaint ... only for substantial and legally sufficient reasons." *St. Paul Fire & Marine*

*Ins. Co. v. United States,* 24 Cl.Ct. 518, 520 (1991). Hence, "leave to amend should be freely permitted absent sufficient explicit reasons indicating that it should be denied." *State of Alaska v. United States,* 15 Cl.Ct. 276, 279 (1988) (citing *Hess v. United States,* 210 Ct.Cl. 483, 537 F.2d 457, 461 (1976)).

*A. Issue (1)*

■ Plaintiff's first contention, that prejudice will result if defendant is permitted to amend its answer, is insufficient on this record to warrant denial of defendant's motion to amend. This we hold because there is a total want of a showing of "undue prejudice." *See Siemens Aktiengesellschaft v. United States,* 26 Cl.Ct. 312, 313 (1992) (citing *United States v. Hougham,* 364 U.S. 310, 316, 81 S.Ct. 13, 17–18, 5 L.Ed.2d 8 (1960) ("Rule 15 of the Federal Rules of Civil Procedure ... was designed to facilitate the amendment of pleadings except where prejudice to the opposing party will result.")).

■ In order to successfully assert *undue prejudice* as a justification for denying a Rule 15 motion, the non-movant *must* demonstrate that one of the following circumstances will result: severe disadvantage or inability to present facts or evidence; necessity of conducting extensive research *shortly before trial* due to the introduction of new evidence or legal theories; or excessive delay that is *unduly* burdensome. *See Alaska,* 15 Cl.Ct. at 280. Mere annoyance and inconvenience, as here, however, are insufficient bases to warrant a denial of a motion to amend. *Id.*

Plaintiff argues, further, that defendant had all of the relevant information relating to the merits of its counterclaim and special plea in fraud when defendant's counsel deposed plaintiff's former employees in September 1993. Thus, it asserts that due diligence required defendant to have then moved to amend its answer at some time closer to its September 1993 depositions, rather than attempting to prolong the setting of the trial date by delaying for six months its motion to amend.

---

2. *See Effingham County Bd. of Educ. v. United States,* 9 Cl.Ct. 177, 179–80 (1985).

This court recognizes that, on this record, it would *not* be in the interest of justice to undermine the spirit of Rule 15 by penalizing defendant for not assessing the merits of said claim sooner than its March 1994 motion to amend, particularly where, as here, the trial on the merits is not scheduled to convene until November 1994. As the Supreme Court in *Foman* explained, "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman,* 371 U.S. at 181–82, 83 S.Ct. at 229–30, citing *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80. Given this thesis, we are compelled to find that defendant's reasonable and careful investigation into the merits of its counterclaim, after receiving *all* relevant probative data, for a period of six months, is not *prima facie* indicia of a calculated intent to delay trial nor an intent to injure plaintiff's ability to adequately and effectively prepare its case. We suggest that the contrary appears, *i.e.,* it reflects a calculated search for the true facts which will facilitate "a proper decision on the merits." *Id.*

In a further effort of advancing its transparent argument of prejudice, plaintiff asserts that defendant's anticipated introduction of two new witnesses that were not included in the government's Witness and Exhibit List, filed with this court on April 3, 1994, will result in additional extensive discovery. While it is possible that the introduction of new legal theories at a time *closely proximating the trial date can result in undue hardship and delay prejudicing a party's ability to adequately prepare its case on short notice,* that situation is clearly not present here. *See Alaska,* 15 Cl.Ct. at 280 (citing *Nevels v. Ford Motor Co.,* 439 F.2d 251 (5th Cir.1971)) (where "the court determined that the plaintiff would suffer 'undue prejudice' because of the nearness of trial. . . ."). Although, in the case at bar, further minuscule time-invoking discovery may appropriately

ensue, due to defendant's introduction of two additional witnesses, the aggregate effect of this extension of discovery, particularly in the absence of a firm trial date or a trial date in the distant future, does not rise to the level of undue prejudice as explicated in *Alaska. See Alaska,* 15 Cl.Ct. at 280. *Senza–Gel Corp. v. Seiffhart,* 803 F.2d 661, 667 (Fed.Cir.1986), citing to *Howey v. United States,* 481 F.2d 1187, 1190–91 (9th Cir.1973), quoting 3 J. Moore, Moore's Federal Practice, § 15.08, 0.835, is instructive of this point where the Court of Appeals for the Federal Circuit stated that "[t]he mere fact that an amendment is offered late in the case is . . . not enough to bar it; amendments may be offered at trial, or even after reversal and remand."

On the record facts, it is clear beyond cavil that plaintiff will *not* suffer undue prejudice, or any significant prejudice at all, if defendant is granted leave to amend its answer. Plaintiff was early-on effectively placed on notice of the scope of defendant's investigation into the alleged fraudulent consulting claims when the government deposed plaintiff's former employees specifically on the alleged fraudulent nature of the plaintiff's consulting fee payments.[3] We cannot see, therefore, how plaintiff can now prove *prima facie* surprise, undue delay, or an excessive burden sufficient to justify its contention that defendant's motion to amend should be denied. At best, all that appears, in substance, are naked allegations of annoyance and inconvenience. *Alaska; Senza–Gel.*

### B. *Issue (2)*

The second issue concerns plaintiff's futility argument. Implicitly, plaintiff next argues that because the CID was able to present virtually unlimited information to the grand jury in its effort to prove the alleged fraudulent nature of U.S. Roofing's consulting claims, the inability of said grand jury to find a basis for criminal indictment is persua-

---

**3.** "In September 1993, defendant had further opportunity to investigate the validity of its counterclaims by deposing all of U.S. Roofing's witnesses. At said depositions, defendant focused specifically on the allegations that the consulting fees claimed were fraudulent." Pltf's Oppos., at p. 5 (March 29, 1994).

sive evidence that defendant's counterclaims are futile and frivolous.[4]

■ When futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments as plaintiff's argument suggests. Instead, courts simply decide whether a party's proposed amendment is facially meritless and frivolous, *i.e.,* "Where futility is proposed as a basis for denying amending a complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint." *Alaska,* 15 Cl.Ct. at 280 (citing *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir.1986)). We are convinced that defendant has clearly presented sufficient *prima facie* evidence to satisfy this court that its fraud claims are not facially frivolous.[5]

Further, and more importantly, this court notes that the standards of proof for criminal fraud proceedings are distinctly different, *i.e.,* higher, from those of a civil fraud proceeding. For example, the standard of proof in a criminal fraud proceeding such as under 18 U.S.C. § 1001, requires the fact finder to convict only on the basis of evidence proving defendant's guilt beyond a reasonable doubt.[6] On the other hand, in a civil False Claims Act fraud proceeding, the fact finder would be required to only find clear and convincing

evidence of a defendant's guilt.[7] In addition, this court has nothing before it as to the sufficiency of the evidence received by the grand jury investigation. Therefore, in the absence of such facts, this court is unable and unwilling to speculate as to the effect of the grand jury's decision, on the case at bar, not to bring forth an *indictment* against plaintiff on a criminal fraud claim. As defendant correctly states, whether or not a grand jury finds a sufficient basis for a criminal indictment has no bearing on this court's decision-making process when it considers whether to allow a party to amend its answer pursuant to Rule 15. Therefore, the grand jury's decision not to indict plaintiff is totally irrelevant to this court's determination of whether defendant should be allowed to amend its answer pursuant to RCFC 15.

*Conclusion*

For all of the foregoing reasons, we conclude and hold that—(i) plaintiff will not be prejudiced by the filing of defendant's amended answer; (ii) defendant's amended answer is not futile; and (iii) justice will be served by the grant of defendant's motion. Therefore, Defendant's Motion For Leave To Amend Its Answer is hereby GRANTED "in the light of the 'strong policy to permit' the amending of pleadings," and "Defendant's Amended Answer To Plaintiff U.S. Roofing's First Amended Complaint, Counterclaims, And Special Plea In Fraud" is hereby

---

4. Defendant emphatically states that plaintiff's contention here is baseless: "[W]e know of no basis for USR's implicit assertion that the grand jury twice refused an Assistant United States Attorney's request to indict USR. Given the secrecy that attaches to such proceedings and the presentment of proposed indictments, it seems doubtful that USR could know of such events, if they ever occurred." Deft's Reply, at p. 5, n. 2 (April 11, 1994).

5. Defendant asserts the following counterclaims under 31 U.S.C. § 3729 (the False Claims Act):

   i) plaintiff is seeking $200,000 in compensation for consulting fees;
   ii) the $200,000 consultant fee payments are for two companies respectively controlled by two officers of plaintiff's company; and
   iii) the consultations, on which plaintiff bases a portion of its total cost claims, never occurred.

   *See* Deft's Amended Answer, pp. 2–7 (dated March 11, 1994).

6. In a criminal fraud claim, 18 U.S.C. § 1001 provides that the government must prove beyond a reasonable doubt that defendant:

   i) knowingly made a false statement on a matter within the jurisdiction of a federal agency or department;
   ii) made a false statement related to a material matter; and
   iii) acted willfully and with knowledge of the falsity of the statement.

7. 31 U.S.C. § 3729 provides that under the False Claims Act, the government must prove by clear and convincing evidence that the defendant:

   i) presented or caused to be presented for payment or approval to the Government of the United States,
   ii) claims upon or against the United States,
   iii) which are knowingly false, fictitious, or fraudulent.

   To recover damages, the government must show that it has incurred damage due to the false claim.

FILED this date. *Senza–Gel,* 803 F.2d at 666, citing *Howey,* 481 F.2d at 1190. Plaintiffs U.S. Roofing, Inc. and St. Paul Fire and Marine Insurance Company shall file responses to the counterclaims and the special plea in fraud on or before May 31, 1994.

IT IS SO ORDERED.